EWING-MERKEL ELECTRIC COMPANY v. LEWISVILLE LIGHT &

WATER COMPANY.

Opinion delivered December 13, 1909.

EQUITABLE SET-OFF—UNLIQUIDATED DAMAGES—NONRESIDENCE OF PLAINTIFF. —In a suit upon contract by a nonresident against a resident of this State, the defendant will be allowed in equity to set-off a claim for unliquidated damages growing out of the breach of an independent contract between the same parties.

Appeal from LaFayette Chancery Court; *J. M. Barker,* Chancellor; affirmed.

*T. M. Pierce, Paul W. Farley* and *Bradshaw, Rhoton & Helm,* for appellant.

The counterclaim does not arise out of the contract set forth in the complaint, nor is it connected with the subject of the action. 87 Ark. 166; 66 Ark. 400; 32 Ark. 281; 48 Ark. 396; 40 Ark. 75; 57 Ark. 606; Kirby's Dig., § 6099. The statute is plain, and has been applied frequently. 22 Ark. 409; 27 Ark. 489; 55 Ark. 312; 57 Ark. 312; 60 Ark. 400. In a suit on contract damages cannot be set off. 27 Ark. 489; 30 Ark. 50; 4 Ark. 527. Unliquidated damages is not a subject of set-off, even in equity. 1 Ark. 31; 29 Mich. 341; 3 Johns. Ch. 351; 8 Paige, Ch. 503; 118 Ill. 612; 48 Mich. 218; *Id.* 615; 54 Ark. 187. The chancellor should not have assumed jurisdiction. 87 Ark. 211; 73 Ark. 462; 74 Ark. 484; 65 Ark. 503; 56 Ark. 391.

*Warren & Smith,* for appellee.

The chancery court was the proper forum. 11 S. W. 2; 4 L. R. A. 858; 9 *Id.* 108; 6 Am. & Eng. Cas. 718; Bispham, Eq., § 27; 4 Metc. 175; 57 Ark. 606. Appellant is liable on its warranty, although it did not know the machinery to be defective. 22 Ark. 454; 53 Ark. 155; 88 S. W. 122; 77 S. W. 1011, 42 S. W. 1020.

BATTLE, J. Ewing-Merkel Electric Company, a corporation organized under the laws of the State of Missouri, sold to the Lewisville Light & Water Company, a corporation organized under the laws of the State of Arkansas, an alternating current generator complete and switch board transformers, for an electric light plant, for $1,150, all second-hand machinery,

but guaranteed to be in strictly first-class order and in good operative condition. The sale was made under a written contract, dated May 10, 1904. The Lewisville Light & Water Company purchased of the Ewing-Merkel Electric Company sundry items of merchandise between July 1 and October 1, 1904, amounting to $488.04, and on the 5th of October, 1904, paid thereon $300, leaving a balance of $188.04.

On the 13th day of July, 1905, the Ewing-Merkel Electric Company brought an action against the Lewisville Light & Water Company, in the Lafayette Circuit Court, for $188.04.

The defendant answered, and admitted that it purchased the merchandise· mentioned in the complaint, and that the sum of $188.04 remains unpaid. "But by way of set-off and cross-bill defendant states that on the 10th day of May, 1904, it entered into a contract with plaintiff for the purchase of certain goods, machinery and material for an electric light plant. That the said machinery and appliances were guaranteed to be in strictly first-class order as set out in the complaint, and defend-' ant agreed to pay the sum of $1,150, and plaintiff guaranteed the machinery to be in good operative condition. That plaintiff knew at the time of the contract of purchase that defendant desired to use them solely for the purpose of operating an electric plant, and guaranteed it to be in first-class order for that purpose. That defendant bought and paid for said machinery, relying solely upon plaintiff's representations and guaranty as to its quality and condition. Defendant was inexperienced in the matter of such machinery, which plaintiff knew, and defendant relied on plaintiff's representations.

"That after defendant had installed said machinery it was found to be defective and unsound, and not in strictly first-class order, nor in good condition. The armature in the generator was worthless and burned out, and the insulation rotten, and the machinery utterly worthless for the purpose of the defendant. That because of the defective condition of the machinery it was not worth more than $100, and the defendant had been damaged in the sum of $1,050. The plaintiff is a non-resident of the State, and has no agent upon·whom service can be had, nor any property in the State, and that it has no adequate remedy at law, and prays for the recovery of the damages,

and asks that the cause be transferred to the chancery court of Lafayette County for hearing, and prayed for judgment."

On October 9, the defendant filed an amendment to its answer and cross-bill, as follows:

"That the exciter purchased from plaintiff failed to excite the fields and armature and thus rendered it impossible to operate the said machine. The bearings on the dynamo were worn and rubbed, and caused the boxes to heat, so that it was impossible to operate the machinery. The transformers were not in first-class order, nor in good operative condition, but were worn and worthless."

On motion of the defendant the cause was transferred to the Lafayette Chancery Court.

The plaintiff answered the cross-complaint of the defendant and denied the allegations.

Much evidence was adduced by both parties; and the court found upon hearing that plaintiff is a non-resident, and has no property in this State; that the defendant is indebted to plaintiff on the account sued on in the sum of $188.04, and that the plaintiff is indebted to the defendant "on account of damages for breach of warranty in the contract for the sale of machinery and appliances, as alleged in the defendant's answer and cross-bill, in the sum of $1,050; that defendant is entitled to judgment for said sum, and that the amount found for plaintiff should be set off against the amount found for defendant *pro tanto,* leaving due defendant the sum of $861.96, and rendered judgment for that amount in favor of the defendant; and plaintiff appealed.

The evidence was sufficient to sustain the findings of fact by the court. At law appellee was not entitled to set up in this action, by way of set-off or counterclaim, the $1,050 damages suffered by it by a breach of contract made by appellant. Was it entitled to set it up as an equitable set-off?

In 2 Story's Equity Jurisprudence, § 1437, it is said: "It has already been suggested that courts of equity will extend the doctrine of set-off and claims in the nature of set-off beyond the law in all cases when peculiar equities intervene between the parties. These are so very various as to admit of no comprehensive enumeration."

In *Rolling Mill Co.* v. *Ore & Steel Company,* 152 U. S. 596, 616, it is said: "By the decided weight of authority it is settled that the insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference. * * * In addition to insolvency, it is held by many well-considered decisions, including those of Illinois, that the non-residence of the party against whom the set-off is asserted is good ground for equitable relief. *Quick* v. *Lemon,* 105 Illinois, 578; *Taylor* v. *Stowell,* 4 Met. (Ky.) 175; *Forbes* v. *Cooper,* 88 Kentucky 285; *Robbins* v. *Hawley,* 1 T. B. Mon. 18; *Edminson* v. *Baxter,* 4 Hayw. (Tenn.) 112; *Davis* v. *Milburn,* 32 Iowa 163."

In *Forbes* v. *Cooper,* 88 Ky. 285, it is said: "It is certainly unconscientious for an insolvent party to coerce the payment of his claim when he is owing the other party an equal or larger sum, and thus leave the latter remediless; nor should a non-resident be allowed, under like circumstances, to enforce through the agency of the courts the collection of his debt, and compel the other party to seek a foreign jurisdiction for relief, and then perhaps find the debtor insolvent. If the object of litigation be the attainment of justice, assuredly such results should be prevented. Indeed, the doctrine of equitable set-off, to the extent it was formerly applied, was based upon moral justice, and to meet such cases as the above, thus preventing wrong. It was then not uncommon to stay an insolvent or non-resident debtor in the collection of his claim until damages, to which the complainant might be entitled to against him, were liquidated under the order of the chancellor, and then apply them in satisfaction of his independent debt."

In *Quick* v. *Lemon,* 105 Ill. 578, it is said: "It would seem to be inequitable to require the corporation to go to another State to collect its demand in an action at law, and we are inclined to hold that the non-residence of the complainant, in connection with the fact that he calls upon a court of equity to enforce his judgment, is sufficient to allow the defendant corporation to prove and set-off its demand set up in the cross-bill against the judgment of the complainant."

To the same effect, see *Porter* v. *Roseman* (Ind.) 6 Am. & Eng. Annotated Cases, 718, and note to that case and cases cited.

The rule announced in these cases is a just rule, and should be enforced. We see no good reason for sending a citizen of this State to a foreign jurisdiction to obtain justice when the courts of this State can afford relief. They are as fully competent to afford relief to the citizen as to the non-resident. Why should one in cases like this be accorded greater rights than the other?

Decree affirmed.