## Patterson, et al. v. Woolridge, et al.

(Decided June 13, 1916.)

## Appeal from Bullitt Circuit Court.

1.  Corporations—Contracts Between President and Corporation—
    Good Faith.—It is the duty of the president of a corporation who
    is acting as the manager thereof to exercise good faith towards
    the corporation in the conduct of its business, and this will not
    permit him to enter into contracts between himself and the cor-
    poration whereby he reaps a profit individually, and in such cases
    he will be made to account to the corporation for the profits thus
    made.

2.  Corporations—Books of—Duty of President in Respect to.—In such
    cases it is the duty of the president and manager to so keep the
    books of the corporation, or if a partnership, the books of the
    firm, as to show the condition of the affairs of the firm or cor-
    pration which he is representing, and if he fails to do this and a
    judgment is rendered against him in a suit for an accounting and
    a settlement of the affairs of the concern by the other stockholders
    of the corporation or members of the firm, this court will presume
    that the trial court was correct and will not search for errors
    whereby to reverse the judgment.

3.  Corporations—Bankruptcy.—Where P. & W. entered into a mer-
    cantile partnership which was under the general management of
    P., and the firm was afterwards incorporated with P. & W. owning
    practically all the stock except a small quantity held by the wife
    of W., and P. was the president and manager of the corporation,
    which had a capital stock of $30,000.00, and at the expiration of
    about ten months it became bankrupt with not enough assets to
    pay the debts, and the books of the corporation were so kept as
    to be unintelligible and impossible to show what had become of the
    assets or the true status of the account of P., a judgment rendered
    in a suit of the plaintiff against the defendant for $4,600.00 will not
    be disturbed.

4.  Corporations—Stockholders—Accounting.—Where it is agreed be-
    tween the parties interested in such concerns that each may ob-
    tain goods from the store at cost price, plus carriage, this in-
    cludes only such goods as are necessary for the domestic use of
    each party and does not include goods taken from the firm at
    that price in wholesale quantities to supply stores owned by the
    individual partner or stockholder thus taking them, and in such
    cases the partner thus offending should be made to account for a
    reasonable profit for all the goods so taken by him above what is
    needed for his domestic use.

5.  Damages—Pleading Claim for Unliquidated Damages.—A claim for
    unliquidated damages may be pleaded as a set off against an ad-
    verse claim when the party against whom it is asserted is a non-
    resident of the State, or insolvent, and the same is true when an

ascertained claim is pleaded as a set off against one for un-
liquidated damages, by a non-resident of the State or who is in-
solvent.

CHARLES CARROLL and J. F. COMBS for appellants.

C. B. SEYMOUR, S. L. TRUSTY, A. C. POPHAM and C. P. BRAD-
BURY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming
on appeal and cross-appeal.

Prior to October 8, 1909, the appellant, G. S. Patter-
son (defendant below) was engaged in the retail mer-
cantile business in Shepherdsville, Ky. On the date
mentioned, or shortly previous thereto, an agreement
was entered into between appellee, W. C. Woolridge,
and the defendant, Patterson, whereby the latter sold
to the former a one-half interest in the mercantile
business in Shepherdsville. The consideration for this
interest was a farm owned by either appellee or his wife,
which was deeded to Patterson. Twenty-five hundred
dollars of the valuation of the farm was credited on
the purchase price of some real property, consisting of
a residence and business house in Shepherdsville which
the appellee at the same time purchased from Patterson,
and he and his wife executed their note to Patterson for
$5,000.00, being the remainder of the sum agreed to be
paid for such real property. After that the mercantile
business was conducted in the name of Patterson &
Woolridge until January 20, 1910. On the latter date
the business was incorporated pursuant to an under-
standing to that effect from the beginning as the Shep-
herdsville Merchandise Company. The capital stock
was fixed at the sum of $30,000.00, one-half of which was
issued to Patterson and the other half to Woolridge,
with the exception of three shares of the par value of
$100.00 each, which were issued to Mary C. Woolridge,
the wife of W. C. Woolridge. From the time of the
formation of the partnership Patterson seems to have
been a dominant spirit in the management and conduct
of its affairs, and when it became incorporated he was
elected president and Woolridge held some minor posi-
tion therein. The corporation was some time in Nov-
ember, 1910, thrown into bankruptcy, and its assets
fully administered by the court, leaving nothing for the
stockholders. At the beginning it seems to have been

agreed largely upon the representations of Patterson, if not entirely so, that the assets of the business were worth $25,000.00, and the good will thereof was valued at $5,000.00, making the sum total of the capital stock of the corporation which was eventually formed.

On August 7, 1911, the appellees, W. C. Woolridge and Mary E. Woolridge, filed this suit in the Bullitt circuit court against the defendant, G. S. Patterson, charging that while the business was being conducted he was the chief manager and was in complete control of it and that he "willfully, maliciously, fraudulently, and for the purpose of destroying the credit and the probable good will of said corporation and of bankrupting same," charged up against it large sums of his inindividual indebtedness; that he made false entries upon the books, to the prejudice of the corporation and to his individual advantage; that he sold to himself large quantities of goods, lumber and merchandise from the stock of the partnership or corporation, for portions of which he failed to charge himself or to account for it, and all of it, whether accounted for or not, at only the price which the partnership or corporation had paid for it with the cost of carriage added, and that he "in many other ways mismanaged the affairs intentionally and for the purpose of defrauding the corporation and its stockholders out of vast sums of money, and by reason of all this it was finally thrown into bankruptcy." The consequence of these willful, intentional, malicious and fraudulent acts on his part as charged in the petition, resulted in a loss of $6,000.00 profits which the corporation or partnership either made or could have made by proper management, and the good will of the concern, valued at $5,000.00, was lost, and that its entire stock, amounting to $30,000.00, was thereby dissipated. These items amounted in the aggregate to $41,000.00, and judgment was asked against him for one-half thereof, or $20,500.00.

The petition was afterwards amended, in which the corporation was made a party defendant and the allegations in the petition were made more specific and stated with greater elaboration. The pleadings of the defendant may be said to consist of a general denial and the pleading of a set-off for the amount of $2,875.95, which represents the balance of a judgment in favor of defendant against the plaintiffs, obtained in the Bullitt

circuit court. This judgment was obtained on the note for $5,000.00, which had been executed by plaintiffs as part purchase price for the residence and store-room conveyed to them by defendant at the beginning of the business relations and for which they agreed to pay $7,500.00, only $2,500.00 of which was paid at the time. In the proceedings to enforce the collection of that note the property was sold and bought by the defendant for the sum of $3,000.00, out of which he paid some past due taxes and other charges against the property, leaving the amount of the pleaded set-off unsatisfied. The right to plead this set-off is questioned by the plaintiffs in this case, but we will not consider that question until later on in this opinion.

Although this action is brought for a tort and necessarily in ordinary, it was afterwards transferred to equity and the case was referred to a special commissioner to take.proof and report to the court his findings upon the matters presented by the pleadings, which were separated by the order of reference into thirteen separate items, upon each of which the commissioner was directed to make a report. It can serve no purpose either to the profession or to the parties litigant to restate those items in this opinion. Suffice it to say, that the commissioner reported as directed and stated that the good will of the Shepherdsville Merchandise Company was without value; that the amount of business done by the firm of Patterson & Woolridge up to the time of the incorporation was $9,343.12, and the business done by the corporation during its existence was $32,669.90; that he could not tell because of the extremely confused condition of the books and the obscure, inefficient and incomplete method by which they were kept, the amount of money, if any, which Patterson obtained, and did not account for, belonging to either the partnership or the corporation; that at one time Patterson subtracted from a charge to himself on the books of $2,965.00, the sum of $2,000.00, leaving it $965.00, and that at the same time he erased a charge against Woolridge of $2,000.00, thereby depleting, according to the view of the commissioner, the assets of the corporation $4,000.00; that a stock of goods located at Cane Springs, in Bullitt county, which defendant sold to the corporation for $3,000.00 was worth only $2,000.00 at the time; that because of the confused condition of

the books, he could not tell the amount of goods which Patterson, in his individual capacity, sold to the corporation at a profit, and for the same reason he concluded that neither the firm of Patterson & Woolridge nor the corporation made a profit while in business; that for the same reason he was unable to find the amount of lumber or goods, if any, belonging to the firm or corporation which the defendant had appropriated to his individual use. He reported, however, that the defendant in executing notes of the corporation or firm to J. M. Robinson, Norton Co. had included therein $1,633.15 of his individual indebtedness. Both parties filed various exceptions to this report and without objections a jury was impaneled to try these exceptions. After an exhaustive amount of confusing testimony, including an investigation of practically each item upon the inefficiently kept books, the court instructed the jury to answer thirteen questions submitted to them, being the same ones submitted to the commissioner. The answer made by the jury to most of these questions was: "We don't know." The verdict was followed by a judgment of the court in favor of plaintiff against the defendant for $4,600.00, to be credited by the set-off hereinbefore mentioned, and from that judgment the defendant prosecutes this appeal and the plaintiff a cross-appeal.

In one of the amended pleadings it was charged that the corporation had been discharged in bankruptcy and the creditors in that way satisfied and were, therefore, no longer interested in the matters involved in the suit; that only the stockholders of the corporation were interested, and the court was asked to transfer the case to equity for a settlement of the affairs of both the partnership and corporation. An order was accordingly made, but after the report of the special commissioner, the case was again transferred to the ordinary docket. It, perhaps, has already been observed that possibly this is the only case where exceptions raising questions similar to the ones here, were submitted to a jury for trial, but inasmuch as this was done without objection or exception, we have determined to dispose of this case and to terminate finally this protracted and costly litigation.

We have already adverted to the way and manner by which the appellant manipulated the books of the corporation by which debits on both his and appellee's ac-

counts were each reduced $2,000.00. The appellant attempts to explain this, but, without going into the testimony, his explanation is not altogether satisfactory to us. It is shown by the commissioner as well as by the testimony of expert accountants that it would have been an easy matter to have depleted the assets of this corporation without the probability of detection, which opportunity was afforded because of the wholly incomplete and inefficient system of keeping the books.

They each show that apparently the system was a studied effort to becloud and confuse, rather than simplify or make clear. It appears that appellant purchased from the partnership and corporation while they were going concerns, large quantities of goods and also lumber, which was handled by and was a part of the business of each. The goods were used to supply other retail stores which the defendant was operating in different parts of the county, and apparently the lumber was used in the construction or repair of houses, the individual property of appellant. It is true the commissioner shows that he is unable to state the amount of these items, but we are convinced from a reading of the record that they were no insignificant sums. In the contract entered into at the beginning between the parties it is stipulated: "It is herein agreed that either party is entitled to purchase any goods carried by the firm at actual invoice price, plus the freight." It is claimed by appellant that he had a right under this stipulation to obtain the goods, including the lumber, from the partnership and corporation in wholesale quantities as stated and at the price stated. He says so in so many words when he testifies: "I had this one provision put in the contract because I knew that I wanted to use lumber and other merchandise carried by the firm," but he states that it was the agreement with Woolridge made after the corporation was formed, that he should "get only groceries for his family use." Leaving out of consideration the unfairness which this interpretation would produce, we are convinced that it gave to the appellant no right to take from the store of either the partnership or corporation goods for such purposes and upon the terms stipulated in the provision of the contract referred to. That provision meant and could only mean that each of the parties should be permitted to take from the stock such articles as they might need for

domestic and family purposes. To give it the interpretation sought by appellant would compel the corporation or partnership to store the goods, pay insurance thereon, pay the salaries of clerks and other necessary help in looking after and taking care of the goods, free of charge to the partner who might take them from the stock.

This is not only contrary to business principles, but also is denied by common sense, fairness and justice. We are convinced that the appellant is due appellees a considerable sum from this item, but we are unable to fix anything like the exact amount. Whatever goods he obtained in this manner in excess of what was necessary for his domestic use he should be charged thereon a reasonable profit.

The record shows that the appellant accounted to the corporation for the $1,633.15 of his individual account included in the notes executed to J. M. Robinson, Norton Co., but it is not altogether clear that this was the only sum so included. The record further shows that in the sale of the Cane Springs store to the corporation for $3,000.00, the appellant made a clear profit of $1,000.00. It is true he contends that appellee, W. C. Woolridge, agreed to this purchase at the price the corporation agreed to pay, but there is conflict in the testimony about this, and when we consider that appellant is by far the stronger character of the two and was, by his position with the corporation, its dominating spirit, and the further fact that Woolridge, because of some alleged peculations, was finally dismissed by appellant from having anything to do with the business, we are not altogether convinced that he should not account to the corporation for the difference between the value of that stock and the price which the corporation paid, this difference being $1,000.00. It is also shown from the record that appellant, before the bankruptcy proceedings, purchased from the corporation the branch of its business as lumber dealers. We are convinced that because of his superior business ability and trading qualities, he obtained this part of the business at a greatly reduced figure. Just what this was we are unable to state with exactness. During all of these transactions the appellant occupied a position of trust with the corporation. He was not only its president, but business manager, and his dealings with it as an individual and his transactions

with reference to its property should have been characterized with perfect good faith.

It was furthermore his duty to keep, or cause to be kept, the books of the two concerns in such a manner as to at least enable an expert accountant to ascertain therefrom the condition of the affairs of the two concerns. The record shows a failure on his part to perform these duties. When we consider that the net result of the enterprise is that a corporation with $30,-000.00 stock was completely dissipated within a year, during which time, according to the incomplete books, a business amounting to $50,000.00 or more was done, upon which there should have been a profit, and keeping in mind the facts which we have heretofore considered concerning the conduct of appellant, we are not prepared to say that the judgment rendered against him was not justified. In doing this, we are not called upon to point out the specific items going to make up that amount. If the evidence upon the whole is sufficient to convince us that the rights of the appellant have not been prejudiced because of the judgment being excessive we feel that we are authorized to let it stand.

Upon the cross-appeal, it is insisted that the judgment should have been for a much larger sum, and complaint is made because the court allowed a credit on the judgment which it rendered to the amount of the set-off pleaded as herein stated. In regard to the first contention on the cross-appeal, we find ourselves unable from the greatly confused condition of the record to say that the judgment should be increased. The real facts, if known, might justify this, but in the absence of more substantial grounds than what has been pointed out to us, we are not convinced that it is our duty to do so. This suit, according to the pleadings, is nothing more than an individual suit by appellees against the appellant, and while as originally brought it sounds in tort, yet it is shown to be such because the alleged violations of duty imposed upon appellant an implied contract; for when he undertook to discharge the duties of president and manager he impliedly agreed to exercise good faith and fairness toward the corporation and stockholders in doing so. Under this view there could be no valid objection urged to the pleading of the set-off or the allowance of it if found to be correct.

But it is furthermore a rule governing the practice with reference to allowing a set-off, that if the litigant against whom it is urged is insolvent it may be pleaded, although the claim of the opposing party is one for unliquidated damages. This question is thoroughly considered and settled as indicated in the case of Forbes & Bros. v. Cooper & Co., 88 Ky. 285.

In the opinion in that case it is shown that in former times the remedy by set-off could not be used in the suit for unliquidated damages, nor could a credit for unliquidated damages be used as a set-off in a suit on contract. The only relief which the defendant had was to enjoin the collection of the judgment until the claim for unliquidated damages could be judicially determined and then for the claims to be adjusted by proceedings in equity. To avoid this circuity of action and multiplicity of suits this court determined the rule as held in that case and cases therein referred to. In the course of the opinion it is said:

"This object of rules of practice is to secure justice, and while we think great respect and regard should be shown for the established ones of remoter times, yet it should not be done, in the absence of a statutory rule, at the expense of justice. For this reason many of the technical rules of a former day have been either modified or altogether disregarded. Our Code of Practice does not forbid one, when sued by an insolvent or non-resident, from using defensively an unliquidated claim, although founded upon a transaction independent of the subject of the action; and in our opinion the ends of justice dictate that he should be allowed to do so. We perceive no principle of reason, justice or policy, superior to the considerations in favor of his being permitted to do so, when the equitable circumstances exist to which we have alluded."

See further Garner v. Jones, 94 Ky. 137; Renaker v. Smith, &c., 109 Ky. 645; and Combs v. Frick Co., 162 Ky. 44.

We, therefore, conclude that the court properly allowed the judgment to be credited by the amount of the pleaded set-off.

Wherefore, the judgment is affirmed on the appeal and the cross-appeal.