Argued February 20, modified and affirmed March 20, rehearing denied May 1, second petition for rehearing denied May 22, 1917.

# SMITH v. WILLIS.

(163 Pac. 810.)

**Mortgages—Foreclosure—Equitable Defense.**

1. In a mortgage foreclosure action, defendant's claim that plaintiff's failure to furnish water for irrigating the land pursuant to a contract made as part of the mortgage transaction is available as an equitable defense, although not strictly a counterclaim.

**Mortgages—Foreclosure—Defense—Sufficiency of Pleading.**

2. In a mortgage foreclosure action, defendant's allegations that its agricultural crops were injured by plaintiff's failure to furnish water for irrigation pursuant to contract *held* sufficient, in absence of motion to make more definite.

Waters and Watercourses—Irrigation—Contract for Water.

3.   Under a contract to furnish certain amounts of water for irriga-
tion, and allowing the land owner to designate when it should be
delivered upon giving three days' written notice, failure to furnish the
prescribed amount of water is not excused because no notice was
given, since such notice is only necessary where the land owner desires
to regulate the flow.

Mortgages—Foreclosure—Deficiency—Judgment.

4.   Where the demurrer to an answer in a mortgage foreclosure
action was sustained, the court could not decree there should be no
deficiency judgment, since there was no pleading upon which it could
find the mortgage was given for the purchase price.

Waters and Watercourses—Irrigation—Agreement to Furnish Water—
    Effect.

5.   Where an agreement to perpetually furnish water for irrigation
was executed as a conveyance, the water right conveyed became ap-
purtenant to and a part of the land.

Mortgages—Foreclosure—Deficiency—Judgment.

6.   Where a deed, the vendor's agreement to furnish water for
irrigation, and a mortgage securing payment for the land and water
rights constituted one transaction, no deficiency judgment can be
rendered upon foreclosing the mortgage, since it was a purchase-
money mortgage.

    [As to rights and remedies of mortgagor at common law, see
    note in 7 Am. St. Rep. 31.]

From Malheur: DALTON BIGGS, Judge.

A foreclosure suit by Douglas Smith, Albert G. Les-
ter and William Butterworth, trustees, against S. M.
Willis and L. G. Willis.   Plaintiffs being dissatisfied
with the decree rendered in the lower court, prosecutes
this appeal.   Affirmed as modified.

Department 1.   Statement by MR. CHIEF JUSTICE
McBRIDE.

This is a suit to foreclose two mortgages upon sepa-
rate parcels of land, hereinafter called for convenience
tracts No. 1 and No. 2.   The defendant answered set-
ting up separate defenses as to each cause of suit, and
a demurrer having been sustained to the answer de-
fault was made as to tract No. 1.   An amended answer
as to tract No. 2 was filed, which admitted the execu-

tion of the note and mortgage sued upon and set up as an affirmative defense by way of equitable recoupment substantially the following facts: That plaintiffs' predecessor in interest, the Willow River Land and Irrigation Company, before the date of the mortgage, was the owner of the land sought to be purchased, as well as of a large body of similar land adjacent thereto, all of which was naturally arid, unproductive, and unfit for cultivation; that for the purpose of reclaiming said land, including that of plaintiffs, the plaintiffs' predecessor constructed an expensive irrigation system, consisting of dams, reservoirs, canals, and ditches, whereby the waters of Willow River and the other streams were impounded and so held and controlled as to be capable of furnishing water ample for the complete and sufficient irrigation of the land described in the complaint as tract No. 2, by the use of which said tract could be made very valuable and productive; that the said Willow River Company being so the owner of the water system described, and being able to furnish the amount of water hereinafter specified, sold and conveyed to S. M. Willis, the perpetual right to one-half inch of water per acre miner's measurement under six-inch pressure of the water so controlled by it, to be used upon and for the irrigation of tract No. 2, and also sold to said defendant said tract for the sum of $4,000; that at the time of the purchase the defendant S. M. Willis paid to the Willow River Company $1,000 cash and executed the note described in the complaint and a mortgage upon tract No. 2 and upon the aforesaid water right to secure the payment of the note; that the conveyance of the water right was dated February 8, 1909, being signed by the parties February 10, 1909, and the deed to tract No. 2 was executed February 28, 1909, but

that the payment of the $1,000 and the execution of
said note and mortgage were all made in contempla-
tion of said deed, and were all parts of the same
transaction; that by reason of the arid nature of the
tract the defendant S. M. Willis would not have pur-
chased it without the water right, which becoming ap-
purtenant thereto and being used for irrigation
thereon rendered the same very productive; that by
such use the said land became especially valuable for
the cultivation and propagation of fruit trees, and
particularly for apples, peaches, and pears, and it also
thereby became valuable for the raising of the ordinary
agricultural crops; that she purchased the land and
water right, paid the $1,000, and executed the note and
mortgage for the express purpose of planting an or-
chard thereon, consisting especially of apples, peaches,
and pears, and would not have purchased them for any
other purpose, have paid the $1,000, nor have executed
said note or mortgage; that said Willow River Land
and Irrigation Company, well knowing said defend-
ant was making the purchase for such purpose and
that she would not have otherwise entered into such
negotiations, urged and encouraged both herself and
her husband, her codefendant herein, to make said
purchase for said purposes, and as an inducement rep-
resented that by the use of the water so conveyed and
guaranteed to her there could be grown and matured
upon said land first-class fruit trees, especially apples,
peaches, and pears, producing excellent fruit in great
quantities, and that large profits could be made there-
by; that neither the Willow River Land and Irrigation
Company nor plaintiffs have furnished the amount of
water stipulated in the agreement, but on the contrary
have failed, neglected, and refused to do so at all times

84 Or.—18

since July 1, 1910; that the quantity actually furnished is as follows:

"For the year 1910, one and one-half acre-feet, three fourths of which was furnished before July first; for the year 1911, one and one-half acre-feet; for the year 1912, one-half acre-foot; for the year 1913, one acre-foot; and for the year 1914, two acre-feet."

That reduced to acre-feet the quantity of water agreed to be furnished by plaintiffs amounts to four and two-tenths acre-feet for each acre of said land; that said quantity of water so furnished was entirely insufficient for the irrigation thereof. It is further alleged that plaintiffs and their predecessor had the water and could have furnished it. The answer then sets forth that defendants, relying upon the agreement of plaintiff and its predecessor to furnish water, in 1909 set out five acres of land in peach trees, five acres in pear trees, and twenty-eight acres in apple trees, all being of the best quality, and tended and cultivated them carefully and in a manner calculated to produce the best results, but by reason of the failure and refusal of the plaintiffs and their predecessor to furnish water as agreed, the land and water right have been worth more than $4,500 less during said period than they would have been if the water had been furnished as agreed; that the Willow River Company and these plaintiffs, as its successors, are the owners of a large quantity of arid land below the land of defendants, and have planted about 800 acres to fruit trees and agricultural crops, and are using water from the irrigation system to irrigate this tract, and in order to do so arbitrarily refuse to furnish defendants with the water stipulated in the contract; that by reason of the failure of plaintiffs and their predecessor to furnish water as agreed, the fruit, the fruit trees, and agricultural crops

planted and growing on said land were damaged to the full amount of $4,500; that plaintiffs are nonresidents of this state, residing in the State of Illinois. Attached to the answer is a copy of the water agreement, too long to be inserted here. We give such portions of it as are material to this discussion:

"Whereas, said party of the second part is the owner of or has contracted for the following described real estate, being in its nature arid land, to-wit: The northwest quarter of the northeast quarter of section 23, township 15 south, range 42 east, Willamette Meridian, except a strip of land sixteen and one-half feet wide around the outside boundary thereof for road purposes; and, whereas, said party of the second part is desirous of acquiring water for the purposes of irrigating said land, said water when acquired to be used and enjoyed in connection with said land only; now, therefore, in consideration of the premises and in consideration of the sum of $1 to it in hand paid, and in consideration of the full compliance by said party of the second part with each and all covenants and conditions herein made incumbent on said second party, said party of the first part doth now and here agree and bind itself, its successors and assigns, subject to the conditions and reservations herein expressed, to furnish to said party of the second part during the irrigation season of each year a sufficient quantity of water to properly irrigate said land so owned by said party of the second part, to-wit: One half miner's inch of water under a six inch pressure or head for each and every acre of land so owned by said party of the second part and as hereinabove described. Said water shall be delivered by said party of the first part to the said party of the second part through the irrigation season of each year; it being understood that the irrigation season shall begin on or about the first of April of each year, and continue until about the fifteenth of September of each year. Said party of the second part during said season as herein defined shall have the right to designate

the time or times when said water shall be delivered to said party of the second part, on giving a three days' notice in writing thereof to said first party, and it being further understood that the total amount of water so to be delivered to said second party shall not in any event exceed the amount of one half miner's inches under six-inch pressure for each acre of land so owned by said party and as hereinabove described.''

A demurrer being overruled the cause was put in issue by a reply, and upon the trial the court found that there had been no injury to defendants by reason of failure of plaintiffs to furnish water for the purpose of irrigating the fruit trees, but that their agricultural crops had been damaged in the sum of $1,996.75, and deducted that sum from the amount of plaintiff's recovery. The court also directed the tracts to be sold separately, and that no deficiency judgment should be entered against defendants. From this decree plaintiffs appeal.

MODIFIED AND AFFIRMED.

For appellants there was a brief with oral arguments by *Mr. Robert M. Duncan* and *Mr. Thomas G. Greene.*

For respondents there was a brief over the names of *Mr. Lionel R. Webster* and *Mr. George E. Davis,* with an oral argument by *Mr. Webster.*

Opinion by Mr. Chief Justice McBride.

1. It is first objected that the demand of defendants here being unliquidated and not arising out of the same transaction as that which occasioned the execution of the mortgage cannot be set off against plaintiff's claim; and to that effect the able counsel for plaintiffs cite Section 74, L. O. L., as amended by Laws

of 1913, p. 312; *Burrage* v. *Bonanza Gold & Quick-silver Mining Co.,* 12 Or. 169 (6 Pac. 766); *Le Clare* v. *Thebault,* 41 Or. 601 (69 Pac. 552). The relation of these cases to the one at bar will be considered later. It may be said that the defense here urged is not strictly a counterclaim, and is not so pleaded. A counterclaim is purely a creature of the statute. It did not exist at common law, which left parties having reciprocal causes of action to litigate them sepa-rately; but there has grown up in the courts of this country a practice in equity independent of statutes allowing a defendant to recoup or set off reciprocal demands against the plaintiff where a denial of such privilege would work such hardship as to amount to a substantial denial of justice. Among the principal reasons for the application of this doctrine the non-residence of the plaintiff in the state where the action or suit is brought and insolvency are mentioned: *Ewing-Merkle Electric Co.* v. *Lewisville Light & Water Co.,* 92 Ark. 594 (124 S. W. 509, 19 Ann. Cas. 1041, 30 L. R. A. (N. S.) 21). This was a case in which an action was brought to recover a balance for goods sold and delivered to defendant, to which de-fendant filed a cross-bill alleging damages for breach of warranty by the plaintiff in another transaction, stating that plaintiff was a nonresident of Arkansas and had no agent in the state upon whom service of summons could be made, and asking that the cause be heard in chancery. The case is not different in prin-ciple from the case at bar. The court allowed the off-set and gave judgment for the defendant for a balance found due it, and in the course of its opinion said:

"The evidence was sufficient to sustain the findings of fact by the court. At law appellee was not entitled to set up in this action by way of set-off or counter-

claim, the $1,050 damages suffered by it by a breach
of contract made by appellant. Was it entitled to
set it up as an equitable set-off? In 2 Story's Equity
Jurisprudence, 13th ed., § 1437a, it is said: 'It has
been already suggested that courts of equity will ex-
tend the doctrine of set-off and claims in the nature
of set-off beyond the law in all cases where peculiar
equities intervene between the parties. These are so
very various as to admit of no comprehensive enum-
eration.' In *North Chicago Rolling Mill Co.* v. *St.
Louis Ore & Steel Co.,* 152 U. S. 596, 616, 38 L. Ed.
565, 572, 14 Sup. Ct. Rep. 710, 716, it is said: 'By the
decided weight of authority it is settled that the in-
solvency of the party against whom the set-off is
claimed is a sufficient ground for equitable interfer-
ence. * * In addition to insolvency it is held by many
well-considered decisions, including those of Illinois,
that the nonresidence of the party against whom the
set-off is asserted is good ground for equitable relief.
*Quick* v. *Lemon,* 105 Ill. 578; *Taylor* v. *Stowell,* 4 Metc.
(Ky.) 175; *Forbes* v. *Cooper,* 88 Ky. 285 (11 S. W.
24); *Robbins* v. *Holley,* 1 T. B. Mon. (Ky.) 191; *Ed-
minson* v. *Baxter,* 4 Hayw. (Tenn.) 112 (9 Am. Dec.
751); *Davis* v. *Milburn,* 3 Iowa, 163.' In *Forbes* v.
*Cooper, supra,* it is said: 'It is certainly unconscien-
tious for an insolvent party to coerce the payment of
his claim when he is owing the other party an equal
or larger sum, and thus leave the latter remediless,
nor should a nonresident be allowed, under like cir-
cumstances, to enforce through the agency of the
courts the collection of his debt, and compel the other
party to seek a foreign jurisdiction for relief, and then
perhaps find the debtor insolvent. If the object of
litigation be the attainment of justice, assuredly such
results should be prevented. Indeed, the doctrine of
equitable set-off to the extent it was formerly applied
was based upon moral justice, and to meet such cases
as the above, thus preventing wrong. It was then
not uncommon to stay an insolvent or nonresident
debtor in the collection of his claim until damages to
which the complainant might be entitled against him

were liquidated under the order of the chancellor, and then apply them in satisfaction of his independent debt.' In *Quick* v. *Lemon, supra,* it is said: 'It would seem to be inequitable to require the corporation to go to another state to collect its demand in an action at law, and we are inclined to hold that the nonresidence of the complainant, in connection with the fact that he calls upon a court of equity to enforce his judgment, is sufficient to allow the defendant corporation to prove and set off its demand set up in the cross-bill against the judgment of the complainant.' To the same effect see *Porter* v. *Roseman,* 165 Ind. 255, 112 Am. St. Rep. 222, 74 N. E. 1105, 6 Ann. Cas. 718, and note to that case and cases cited. The rule announced in these cases is a just rule, and should be enforced. We see no good reason for sending a citizen of this state to a foreign jurisdiction to obtain justice when the courts of this state can afford relief. They are as fully competent to afford relief to the citizen as to the nonresident. Why should one in cases like this be accorded greater rights than the other?''

Among the cases cited in the note to the above case are the following, where the claims offset were for unliquidated damages: *Plattner Implement Co.* v. *Bradley A. & Co.,* 40 Colo. 95 (90 Pac. 86); *Fitzgerald* v. *Wiley,* 22 App. D. C. 329; *Taylor* v. *Stowell,* 4 Met. (Ky.) 175; *Forbes* v. *Cooper,* 88 Ky. 285 (11 S. W. ,24); *Edminson* v. *Baxter,* 4 Hayw. (Tenn.) 112 (9 Am. Dec. 751); *North Chicago Rolling Mill Co.* v. *St. Louis Ore & Steel Co.,* 152 U. S. 596 (38 L. Ed. 565, 14 Sup. Ct. Rep. 710). The authorities both for and against the proposition are so exceedingly well collated in the note in 30 L. R. A. 21, that it is needless to recapitulate them here. We have carefully examined them, as well as other cases cited by counsel, and agree with the doctrine announced by the Supreme Court of Arkansas in the case first cited. The plain-

tiffs in this case come into a court of equity and say to the defendants:

"You owe us $3,000 upon a note and mortgage, and we demand payment or foreclosure."

The defendants reply:

"Yes, it is true that we gave you a note and mortgage and agreed to pay you $3,000, but that promise was in consideration, among other things, that you would furnish us water to irrigate our orchard and crops. You did not furnish the water, and by reason of your breach of the contract the land that we mortgaged to you failed to produce the crops which a compliance by you with your agreement would have enabled us to produce, and by your failure to keep your agreement we are injured in a sum greater than the amount of your mortgage."

The plaintiffs then say to the court:

"Please allow us to use the equitable machinery of this court to sell these people out of house and home, and after we have done that they can come to Chicago and bring an action at law to determine whether we have broken our agreement to furnish them water."

This is not one whit overdrawn. It is plaintiffs' contention stripped of legal verbiage and expressed in common, every-day language; and the very statement of it marks its inequity. The defendants' answer was good as an equitable defense.

2. The next question suggested in the brief of appellant is that there was no allegation in the answer upon which the court could base a finding of damage to defendants' agricultural crops. While the allegations in regard to damage to agricultural crops are somewhat meager when compared with the reiteration of the claim for damages respecting the orchard, we

think in the absence of a motion to make more definite and certain they were sufficient. They are these:

"That by the use of said water on said land in the irrigation thereof under and pursuant to said perpetual right of use as aforesaid, said land became especially valuable for the cultivation and propagation of fruit trees and particularly for apples, peaches, and pears, *and said land also thereby became valuable for the raising of the ordinary agricultural crops.*"

This taken in connection with the other allegations regarding the worthlessness of the land without water fairly states that water was necessary in order to raise agricultural crops. Again we find this allegation:

"And by reason of said faults, failures, and refusals [referring to plaintiffs' failure to furnish water], said S. M. Willis has suffered the loss of, and to, her fruit trees and fruit, *and agricultural crops planted and growing* on said land to the full amount of $4,500."

Both these allegations are denied in the reply. We think they put in issue three matters: (1) Whether the water was necessary for the growing of agricultural crops; (2) whether such crops were planted and grown upon said land; and (3) whether they were injured by reason of plaintiffs' refusal to furnish the necessary water to irrigate them as provided in the agreement. It is true that the allegations in the answer are not models of good pleading, but they were sufficient to raise the issue, and the testimony on this branch of the case was not objected to on the ground of the insufficiency of the pleading. We think such damages were general and such as might reasonably be expected as the result of the injury averred: 1 Sutherland on Damages, 763 et seq.; 8 R. C. L., § 156, p. 611; *Wisner* v. *Barber,* 10 Or. 342; *Dose* v. *Tooze,* 37 Or. 13 (60 Pac. 380). It is the view of the writer

that the pleading would be sufficient even if tested by the rule applied to allegations of special damage; there being no specific objection to it by motion: 13 Cyc. 179; *Knittel* v. *Schmidt,* 16 Tex. Civ. App. 7 (40 S. W. 507); *Conover* v. *Hanke,* 71 Wis. 108 (36 N. W. 616). The wrong alleged is a breach of a contract to furnish water. The damage therefrom is alleged to be the injury to fruit and agricultural crops planted and growing upon the land. The defendants were not asked and neither did the law require them to itemize their damages nor to present them in the form of a bill of particulars.

3. It is further contended that under the irrigation agreement between plaintiffs' predecessor and the defendants the plaintiffs could not be put in default for failure to furnish water unless the defendants should have demanded the delivery thereof by a three days' notice in writing. We do not so construe the contract. It is evident that it was the intention first to provide for a continuous flow of water in quantity of one half a miner's inch for every acre of land in tract No. 2 during the irrigation season, namely, from April 1st to September 15th of each year. The succeeding clause giving the purchaser a right to vary the method of delivery by giving three days' notice in writing was for the benefit of the purchaser, who might thereby instead of having a small quantity delivered continuously amass water, so to speak, and have the quantity so conserved delivered to him according to his needs so long as the quantity ultimately demanded should not exceed 4⅕ acre-feet during the season, which would be the total flow computed in acre-feet. There was reason in requiring notice to be given in writing when a delivery of water was to be required in larger quantities and at intervals instead

of continuously, since it would enable the grantor to make arrangement to conserve in its reservoirs a sufficient quantity of water to meet the demand. The evidence indicates that defendants frequently verbally demanded the water to which they were entitled, and that it was not furnished. It also sufficiently appears that the original grantor and these plaintiffs used water from their irrigation system to irrigate 800 acres of their own land, and that this occasioned such a shortage they were unable to furnish the water in the agreed quantity to defendants. This they had no right to do. It was their duty to furnish the water they had contracted to furnish to defendants at any inconvenience that a compliance with their contract might occasion to themselves, and they had no legal right to occasion a shortage by creating an additional use on lands owned by them.

4–6. The court erred by decreeing that there should be no deficiency judgment relative to tract No. 1. As to this tract there was no defense. The demurrer to the answer having been sustained, and no new pleading having been filed, the case stood as though no answer had ever been attempted, and there was no pleading upon which the court could base a decree that the note and mortgage given on that tract were executed to secure the purchase price. Upon tract No. 2 the case is different. The agreement to furnish the water, the deed conveying the land, and the mortgage were all parts of the same transaction, and it is specified in the contract, which is executed with all the formalities attending a conveyance of real property, that the right therein conveyed shall be perpetual. The water right thereby became an appurtenance to the land, and as such a part of the realty: *Ruhnke* v. *Aubert,* 58 Or. 6 (113 Pac. 38).

Treating the deed, the water contract, and the mortgage as one instrument, as they should be considered under the circumstances, the conclusion follows that the mortgage was for the purchase price of real property, and the plaintiffs were not entitled to a deficiency judgment as to the mortgage upon tract No. 2. With the modification above suggested the decree will be affirmed, and defendants will recover their costs.

MODIFIED AND AFFIRMED.

MR. JUSTICE BENSON, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.