TOPAS et al. v. JOHN MacGREGOR GRANT, Inc.*

Circuit Court of Appeals, Second Circuit. April 4, 1927.

No. 237.

1. Account stated ⊜6(2)—Having repudiated factor's right to set-off, principals held· under no duty again to object, on receiving detailed information, to avoid account stated.

Where principals repudiated in toto factor's right to set off any items whatever against principal's funds in factor's hands, principals were under no duty again to object, on receiving letter from factor, setting forth in detail items set off, as against contention that an account stated resulted from such failure to object.

2. Accord and satisfaction ⊜10(1)—Compromise and settlement ⊜6(2)—Principal's drawing down of factor's deposit in bank for principal held not accord and satisfaction respecting factor's claims against principal.

Where factor deposited only part of proceeds of sale of wool in bank on behalf of principal, and retained balance to pay for claims against principal on other unconnected transactions, principal's drawing down of money so deposited did not constitute accord and satisfaction; sum deposited being admittedly due, and not being given in settlement of disputed claim.

3. Set-off and counterclaim ⊜33(1)—Factor held not entitled to set off claims against principal on unconnected transactions against proceeds of its sale of principal's wool.

Where foreign bank shipped wool to defendant as factor, to sell and remit proceeds to bank, proceeds of sale in equity belonged to bank, in factor's possession as fiduciary, and, in absence of factor's lien, factor was not entitled to set off against such proceeds claims against bank arising out of other unconnected transactions, because of bank's nonresidence, and rule would be the same if bank was insolvent.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Boris Topas and others, copartners doing business under the name of M. A. Topas & Co., and another, against John MacGregor Grant, Inc. From a decree dismissing plaintiffs' bill in equity for an accounting, plaintiffs appeal. Reversed and remanded, with directions.

Evarts, Choate, Sherman & Leon, of New York City (Maurice Leon, Joseph H. Choate, Jr., and Raymond G. Irvine, all of New York City, on the brief), for appellants.

Isidor J. Kresel, of New York City (William S. Siemon, of New York City, on the brief), for appellee.

Before MANTON, HAND, and SWAN, Circuit Judges.

*Certiorari denied 47 S. Ct. 766, 71 L. Ed. ——.

HAND, Circuit Judge. Topas & Co. were China merchants, using the Russo-Asiatic Bank at Shanghai as their bank. Between July, 1919, and March, 1922, they shipped certain wool to the defendant as a factor, to sell and remit the proceeds to the bank. The bills of lading and other shipping documents Topas & Co. delivered, properly indorsed, to the bank, which lent upon them sums aggregating something more than $150,000. The defendant after long delays (to which both plaintiffs assented), due to the condition of the wool market, eventually sold the parcels and realized, after deducting conceded commissions and disbursements, somewhat less than the bank's advances.

· It had been the practice of the bank and the defendant, who had had many earlier transactions, for the defendant to make remittance by depositing funds in the Irving Bank in New York, and it may be taken as agreed that such a deposit was a payment by, and an acquittance of, the defendant. In accordance with this practice, the defendant deposited to the bank's credit in the Irving Bank about $44,000 of the net proceeds arising from the sale of the wool, but retained to its own use the balance, about $108,000, which it credited against claims that it asserted against the bank arising from other unconnected transactions, not necessary here to set forth.

Thereupon the defendant cabled the bank that it had credited its account with the sum retained and had deposited the balance to its credit in New York. The bank at once asked on whose authority the larger sum had been credited to its account with the defendant, refused to admit the validity of the set-off, and demanded an immediate refund to the Irving Bank. On the day after the defendant's cable announcing the retention of the funds, it wrote the bank inclosing an account setting. forth in detail the items which it had set off against the funds collected. The bank did not answer this letter, but Topas & Co. wrote twice to the defendant, apparently after its receipt, protesting against the set-off, and putting the affair in the hands of their lawyers in New York.

The plaintiffs sued jointly for an accounting, to which the defendant pleaded an account stated, an accord and satisfaction, and its right of set-off. The District Judge held that there was no accord, but that the defendant had the right to set off its claims because of the bank's nonresidence. Without determining whether there had been an account struck between the parties, he held that the bank might not challenge the account rendered by the defendant in this suit, but must go to an action at law. For these reasons he dismissed the bill.

We shall assume without deciding that the defendant might treat the bank as the only party in interest, its advances to Topas & Co. on the shipping documents being greater than the net proceeds of the wool. This is the best that the defendant can demand, and so viewed the question of title to the wool becomes immaterial.

[1, 2] That there was no account· struck and no accord, seems to us too plain for discussion. The plaintiff's failure to object to the written account after their cables and letters of protest could not be taken as an assent to its correctness, and without assent no account can be struck. Having repudiated in toto the defendant's right to set-off any items whatever against their funds in its hands, they were under no duty again to protest, upon receiving information of what those items were. Taber Lumber Co. v. O'Neal, 160 F. 596, 601 (C. C. A. 8). As for accord, since the sum deposited to the bank's credit in the Irving Bank was admittedly due, and was not therefore given in settlement of a disputed claim, the bank released nothing by drawing it down, as it did. Fire Ins. Ass'n v. Wickham, 141 U. S. 564, 12 S. Ct. 84, 35 L. Ed. 860.

[3] We pass the question whether the bill should in any case have been dismissed, even though the defendant's account was in fact correct; that is, whether by submitting an account to his principal an agent may throw upon him the duty of falsifying the credits which he claims.. In our judgment the situation was not one in which the defendant had any right of set-off at all. It was the bank's factor, claiming no factor's lien for these charges upon the proceeds of the wool; those proceeds certainly in equity belonged to the principal, regardless of where the legal title was vested. Thus the defendant held the funds in a fiduciary capacity. It is quite true that equity allows set-offs not cognizable at law, when justice demands, as for example if the creditor has become insolvent. North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 14 S. Ct. 710, 38 L. Ed. 565. This power has been extended at times to cases where the creditor, though solvent, is a nonresident. Brown v. Pegram (C. C.) 149 F. 515; Loy v. Alston (C. C. A.) 172 F. 90; Quick v. Lemon, 105 Ill. 578; Bibb Land & Lumber Co. v. Lima Machine Works, 104 Ga. 116, 30 S. E. 676, 31 S. E. 401; Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24; Ewing-Merkel Elec. Co. v. Lewisville Light & W. Co., 92 Ark. 594, 124 S. W. 509, 30 L. R. A. (N. S.) 21, 19 Ann. Cas. 1041. As the bank

was a nonresident, the defendant claims the benefit of this doctrine, adding that its status was doubly uncertain because the Russian government had confiscated its property and assumed to terminate its existence.

However this may be, the doctrine does not avail a fiduciary, whom equity treats as holding the res in a separate capacity. Thus in Amer. Brake Shoe Co. v. N. Y. Rys. Co. (C. C. A.) 10 F.(2d) 920, we held that even the insolvency of the beneficiary of a trust fund would not justify such a set-off, and the same rule was applied in Cook, etc., Bank v. U. S., 107 U. S. 445, 2 S. Ct. 561, 27 L. Ed. 537. In Hanover Bank v. Suddath, 215 U. S. 122, 30 S. Ct. 63, 54 L. Ed. 120, the bank had collected the proceeds of cheques sent to it for that purpose, but was not allowed to set them off against claims due from the insolvent forwarder. That case may perhaps be regarded as involving a conversion, though strictly it did not, as the bank was probably entitled to deposit the money among its general assets. If a conversion, it is like Morris v. Windsor Trust Co., 213 N. Y. 27, 106 N. E. 753, Ann. Cas. 1916C, 972, and Braithwaite v. Akin, 3 N. D. 365, 56 N. W. 133. Even so, it makes no difference in the application of the doctrine, which is confessedly the creation of equity and in whose application equity is not controlled by legal categories. The malappropriation of a trustee must be in the eyes of equity an equal wrong as the conversion of a legal title, when the question is of equitable set-off, and if the second gives no ground for a relief, neither does the first. While as we observed in Amer. Brake Shoe Co. v. N. Y. Rys. Co., the settled rule in bankruptcy may depend upon the form of the statute, the same considerations apply when the statute does not control.

Though the limits of the doctrine are not fixed, limits there are, even if defined no more closely than as general notions of justice may prescribe. No one would think it just that a bailee should keep the chattel bailed as a set-off for a debt, even after the debtor became insolvent. Indeed, were it not so, the chattel would be a pledge for the debt, and the bailee get security though he had assumed the risk of the bailor's credit in the counter transaction. A trust is no different; when a trustee accepts his beneficiary's promise he takes the risk of his insolvency. Neither party supposes that the res had been pledged. The transactions are regarded as independent of each other, and we say that there is no implied understanding that they shall cancel each other. By this we mean no more than that we impute to each party an assent so to have regarded them, had they been faced with the contingency at the outset. Succinctly we say that it would be unjust now to treat them so, just as by a contrary imputation we say the opposite when the items are contractual.

Therefore, even if the bank were insolvent we should decline to allow the set-off; mere nonresidence is clearly a weaker equity. Moreover, while the bank was strictly a nonresident, in effect the defendant had all the rights against it which it would have had against a resident. It could have performed its obligation by depositing the funds with the Irving Bank, whereupon it could at once have attached them for its claims. That would have imposed upon it the duty of proving its case, while not exposing the bank to the hazards of its own continued solvency. This procedure it ignored and took the law into its own hands by appropriating property which was in no sense its own. It seems to us to be in no stronger situation than any other fiduciary who wishes to bring into its account independent obligations having no relation to the subject-matter.

We understand that upon this accounting the plaintiffs do not seek to surcharge the defendant beyond the net sum acknowledged to be due from the sale of the wool. The controversy is limited to the falsification of the credits debited against those sums. In the view we take it will not therefore be necessary to send the matter back for an accounting. The plaintiffs are entitled to a decree for the net proceeds without deduction, and this amount is agreed upon by both sides to be the sum retained by the defendant as admitted in its account.

Decree reversed and cause remanded with instructions to proceed in accordance with the foregoing opinion.