and (2) that a specific legacy relates to articles owned by the testator at the execution of the will, it seems sound to hold that the bequest in Item 4 of the will under consideration is a general bequest.

However, if this bequest were specific, we now believe that the statute would apply and contribution could be enforced against the specific devisees.

Although we had not examined the case of Baker v Baker, 42 A. L. R., 1514 and the annotation thereto at page 1519, we had followed the line of reasoning set forth in the early part of the annotation in determining that the statutes, §10583 and §10584 GC had no application in this case. But an analysis of this annotation and the cases cited thereunder is convincing that we were in error.

We therefore, although reaching the result by different processes adhere to our former decision that contribution in this case cannot be required of the specific devisees.

The letter from counsel will be considered as an application for rehearing and it may be overruled and exceptions noted.

ALLREAD, PJ and KUNKLE, J, concur.

### RUBEL v HUNT

Ohio Appeals, 1st Dist, Hamilton Co
No. 3860. Decided May 18, 1931

Henry Bentley and Floyd Williams, Cincinnati, for Rubel.
E. P. Moulinier, Cincinnati, for Hunt.

**ROSS, PJ.**

We think it manifest that plaintiff in error after the sale of the collateral held the surplus as trustee for the receiver of Roberts and Hall. 49 C. J. "Pledges," p. 920, section 52.

It has been held that insolvency presents an occasion for the assertion of an equitable set-off. 24 R. C. L., p. 843. This does not apply, however, when the one asserting the set-off is a trustee and the set-off is a trust fund. Id., p. 872.

We quote from the opinion of Cook County National Bank v United States, 107 U. S., 445, at page 452:

"It remains only to consider whether the United States have the right to claim the payment of this demand out of the surplus moneys remaining in the treasury of the proceeds of the bonds deposited as security for the circulating notes of the bank. The surplus is sufficient to pay the demand of the United States in full. Can the United

States set off their demand against these proceeds? We have no hesitation in answering this question in the negative. The bonds were received in trust as a pledge for the payment of the circulating notes. The statute so declares in express terms. Rev. Stat., sects. 5162 and 5167. They were to be returned to the bank when the notes were paid, if not sold to reimburse the United States for moneys advanced to redeem the notes. The bank could have claimed their return at any time upon a surrender of the notes. The surplus constituted the assets of the bank, and part of the fund appropriated by the statute for its creditors. It was charged with this liability, and was held subject to it after the purposes of the original trust were accomplished, although remaining in the treasury. It was then subject to a new trust. A trustee cannot set off against the funds held by him in that character his individual demand against the grantor of the trust. Courts of equity and courts of law will not allow such an application of the funds so long as they are affected by any trust. It would open the door to all sorts of chicanery and fraud. The fund must be relieved from its trust character before it can be treated in any other character."

To the same effect is Boris, et al., etc. v Grant, (18 Fed. (2d) 724,) 52 A. L. R. 807, where the first paragraph of the syllabus is:

"A factor holds in equity the net proceeds of the sale of a commodity in trust for his principal, and is not entitled to set off against the funds, claims arising from other unconnected transactions with the principal, even though the latter is insolvent and a non-resident."

"Though the limits of the doctrine are not fixed, limits there are, even if defined no more closely than as general notions of justice may prescribe. No one would think it just that a bailee should keep the chattel bailed as a set-off for a debt, even after the debtor became insolvent. Indeed, were it not so, the chattel would be a pledge for the debt, and the bailee get security though he had assumed the risk of the bailor's credit in the counter transaction. A trust is no different; when a trustee accepts his beneficiary's promise he takes the risk of his insolvency. Neither party supposes that the res had been pledged. The transactions are regarded as independent of each other, and we say that there is no implied understanding that they shall cancel each other. By this we mean no more than that we impute to each party an assent so to have regarded them, had they been faced with the contingency at the outset. Succinctly we say that it would be unjust now to treat them so, just as by a contrary imputation we say the opposite when the items are contractual." Id., p. 810.

While recognizing the apparent harshness of the rule, we are bound by a principle so well founded.

The judgment of the Court of Common Pleas of Hamilton County is affirmed.

HAMILTON and CUSHING, JJ, concur.

## RIFFLE, Admr. v STATE AUTO MUTUAL INS. ASSN.

Ohio Appeals, 8th Dist, Cuyahoga Co
No. 11216. Decided June 29, 1931

Howell, Roberts & Duncan, Cleveland, for Riffle, Admr.

Merrick & Walsh, Cleveland, for State Auto Mutual Ins. Assn.

JUSTICE, PJ, CROW and KLINGER, JJ, (3rd Dist) sitting.

JUSTICE, PJ.

In **Union Trust Company v Lessovitz, et al, 122 Oh St 407,** the Supreme Court held: